UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MELANIE PELCHA,** | ) | Case No. 1:17 CV 497 |
| | ) | |
| Plaintiff, | ) | Judge Black |
| | ) | |
| v. | ) | |
| | ) | |
| **MW BANCORP, INC., ET AL.,** | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT WATCH HILL BANK'S SUMMARY JUDGMENT MOTION

Pursuant to Fed. R. Civ. P. 56(C), Defendant Watch Hill Bank moves the Court for an order granting it summary judgment on all plaintiff Melanie Pelcha claims against it. Summary judgment is warranted as there are no genuine issues of material fact regarding plaintiff's claims. Specifically, the undisputed facts establish that:

(1) Plaintiff was terminated by Watch Hill Bank for insubordination and performance-related issues based on the recommendation of her supervisor;

(2) Plaintiff has not marshaled any evidence even to suggest that she was terminated on account of her age;

(3) Even if plaintiff can point to direct or indirect evidence of any age bias, plaintiff cannot overcome Watch Hill Bank's legitimate business reason for terminating her; and

(4) Plaintiff received the same information provided to all shareholders of MW Bancorp.

As more fully established below, because there are no genuine issues of material fact, the Court should grant Watch Hill Bank's summary judgment motion and dismiss plaintiff's claims against it in their entirety and with prejudice.

The reasons for this Motion are more fully explained in the accompanying Memorandum in Support.

        Respectfully submitted,

        */s/ Robin D. Miller*
        Robin D. Miller (0074375)
        ULMER AND BERNE, LLP
        600 Vine Street, Suite 2800
        Cincinnati, Ohio 45202
        Telephone: 513-698-5054
        Fax: 513-698-5055
        E-Mail: rmiller@ulmer.com

        *Attorney for Defendant Watch Hill Bank*

**MEMORANDUM IN SUPPORT OF WATCH HILL BANK'S SUMMARY JUDGMENT MOTION**

I. **THE UNDISPUTED FACTS ESTABLISH THAT WATCH HILL BANK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AS A MATTER OF LAW.[1]**

Watch Hill Bank hired Plaintiff in August of 2005. (3/22/19 Deposition of Melanie Pelcha ("Pelcha Dep.") at 18 (excerpts and exhibits are attached as Ex. A).) The bank initially hired her as a teller though over the years, she also served as head teller and branch manager. (*Id*. at 20.) Throughout the years, plaintiff reported to a variety of supervisors at Watch Hill Bank. (*Id*. at 21-25.) In May 2016, plaintiff's then supervisor, Janet Schneider, left the bank and plaintiff began reporting to a new supervisor, Brenda Sonderman. (*Id*. at 26.)

Almost immediately, plaintiff and Ms. Sonderman encountered difficulties. (*Id*. at 25-27, 60-61, 74-76.) Plaintiff had "problems" with Ms. Sonderman. (*Id*. at 60.) Plaintiff felt that Ms. Sonderman did not like plaintiff and plaintiff also felt that Ms. Sonderman was not qualified to be her supervisor. (*Id*. at 48-49, 61.)

In May 2016, in an effort to facilitate scheduling for customer-facing employees, Ms. Sonderman created a form to be completed by employees to request and/or document time off. (4/25/19 Deposition of Brenda Sonderman ("Sonderman Dep.") at 242-43 (excerpts attached as Ex. B).) Ms. Sonderman began implementing the form policy at weekly staff meetings and advised employees that the request off form needed to be completed, even for time already approved, so as to enable Ms. Sonderman to adequately staff the bank during the bank's hours. (Pelcha Dep. at 65-66, Exs. 4 & 5.) The form was provided to all employees, including plaintiff, and all customer-

---

[1] Watch Hill Bank's Motion also is supported by the Statement of Undisputed Facts which is being filed simultaneously.

facing employees were expected to abide by the policy. (*Id*. at 68-69; Sonderman Dep. at 310-11, 317, 319-20.)

In early-July 2016, plaintiff intended to take a few hours off one afternoon to accompany her son to a dentist appointment. (Pelcha Dep. at 57-58.) Ms. Sonderman advised plaintiff that she had not received a request for the time off. (*Id*. at 77; Sonderman Dep. at 260, 322-23, Ex. 6.)[2] When Ms. Sonderman confronted plaintiff about the failure to complete a time-off request, plaintiff stated, "I'm not filling it out because I don't have to." (Sonderman Dep. at 154-55.)

On July 8, 2016, at a Senior Management Meeting, Ms. Sonderman advised the other senior managers, including CEO Greg Niesen, that she was encountering difficulty with plaintiff. (4/15/19 & 4/29/19 Depositions of Gregory Niesen ("Niesen Dep.") at 100, 103 (excerpts from both volumes attached hereto as Ex. C.) She recounted the confrontation with plaintiff from a few days prior and further reported that plaintiff exhibited a negative attitude, had failed to complete tasks timely, and otherwise engaged in insubordination. (*Id*. at 100-04.) Because Watch Hill Bank was a small bank and negativity and insubordination tends to be contagious, Mr. Niesen operated under a "zero tolerance insubordination policy." (*Id*. at 148.) In other words, Mr. Niesen will not tolerate employees who engage in insubordination. (*Id*.)

Mr. Niesen requested that Ms. Sonderman document the issues with plaintiff and expressed his intention to terminate plaintiff. (Sonderman Dep. at 188-191.) Mr. Niesen, however, wanted to allow plaintiff the opportunity to respond to Ms. Sonderman's allegations of insubordination and other misconduct before making a final decision regarding plaintiff's employment. (Niesen Dep. at 145-146.) On July 11, 2016, Mr. Niesen met with plaintiff at the bank and advised her of

---

[2] This was not the first time plaintiff refused to follow the time-off request policy. The time-off request form was required even for time off that already had been approved for scheduling purposes. However, plaintiff did not complete the form for a two week vacation on the ground that her former supervisor approved the time off. (Pelcha Dep. at 69-71.)

4

Ms. Sonderman's concerns. (*Id*. at 144-145.) Mr. Niesen brought Brian Veith, a Senior Vice President of Watch Hill Bank, with him to witness the discussion with plaintiff. (*Id*.)

At that meeting. plaintiff denied Ms. Sonderman's allegations. (*Id*. at 150-51.) To give plaintiff the opportunity to work through Ms. Sonderman's concerns with Ms. Sonderman and salvage plaintiff's employment, Mr. Niesen encouraged plaintiff to meet with Ms. Sonderman first thing the next day, i.e., the morning of July 12th. (*Id*. at 152-53.)

The morning of July 12th, at 8:26 A.M., Mr. Niesen received an email from Ms. Sonderman documenting the incidents and concerns she reported at the July 8th meeting. (*Id*. at 155-56; Ex. 6.) Within minutes of receiving Ms. Sonderman's email, Mr. Niesen received a call from Ms. Sonderman to advise him that plaintiff had not come to talk with her and that, instead, plaintiff was badmouthing Ms. Sonderman to other bank employees and, generally, exhibiting negativity. (*Id*. at 163-64.) That solidified Mr. Niesen's decision to terminate plaintiff. (*Id*. at 168-170.) That same day, Mr. Niesen went to the Mount Washington branch and terminated plaintiff. (*Id*.)

Following plaintiff's termination, her job duties were primarily spread out among several existing employees. (Sonderman Dep. at 272-280, 321.) In addition, Ms. Sonderman hired an "older" employee to replace plaintiff and assume plaintiff's teller duties. (*Id*. at 236.) All the existing employees, some whom were older than plaintiff and some of whom were younger than plaintiff, assumed portions of plaintiff's duties in addition to their own duties. (*Id*. at 272-280, 321.) Specifically, each of the following employees assumed portions of plaintiff's duties upon

her termination: Lindsay Crothers,[3] Rebecca Firestone,[4] Joann Migliozzi,[5] Becky Roush,[6] and Ms. Sonderman.[7] (*Id.* at 60, 272-73, 277, 321-22.)

**II.  BASED ON THE UNDISPUTED FACTS, THE COURT SHOULD AWARD SUMMARY JUDGMENT TO WATCH HILL BANK AS A MATTER OF LAW.**

**A.  The Legal Standard Supports an Award of Summary Judgment.**

Summary judgment is available under Fed. R. Civ. P. 56(C) if Watch Hill Bank establishes that the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Watch Hill Bank bears the initial burden of pointing to the absence of a genuine issue of material fact – which it can do by demonstrating that plaintiff lacks evidence to support an essential element of her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Once Watch Hill Bank establishes the absence of a genuine issue of material fact, plaintiff may not merely rest on her allegations or conclusory statements and she must come forward with specific facts raising a triable issue of fact. *Id.* at 324.

Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). And a mere scintilla of evidence in support of plaintiff's position is insufficient to defeat summary judgment in Watch Hill Bank's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[3] Lindsay Crothers was under forty years old at the time of plaintiff's termination. (4/11/19 Deposition of Janet Schneider ("Schneider Dep.") at 32 (excerpts attached as Ex. D.)
[4] Rebecca Firestone was under forty years old at the time of plaintiff's termination. (*Id.*)
[5] Joann Migliozzi was in her mid-fifties at the time of plaintiff's termination. (Sonderman Dep. at 277.)
[6] Becky Roush was in her eighties at the time of plaintiff's termination. (*Id.* at 60.)
[7] Brenda Sonderman was in her mid-fifties at the time of plaintiff's termination. (*Id.* at 12.)

6

In the present matter, there are no triable issues regarding: (1) Plaintiff was terminated by Watch Hill bank for insubordination and performance-related issues based on the recommendation of her supervisor; (2) plaintiff has not marshaled any evidence to suggest even that she was terminated on account of her age; (3) even if plaintiff can point to direct or indirect evidence of an alleged age bias, plaintiff cannot overcome Watch Hill Bank's legitimate business reason for terminating her; and (4) plaintiff received the same information as all shareholders of MW Bancorp.

**III.    ARGUMENT**

Watch Hill Bank is entitled to summary judgment on plaintiff's claims because the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that [Watch Hill Bank] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). Simply put, plaintiff cannot provide any evidence in support of her age discrimination and shareholder claims. Accordingly, Watch Hill Bank is entitled to judgment in its favor as a matter of law.

**A. The Undisputed Facts Demonstrate That Plaintiff Cannot Support A Claim For Age Discrimination.**

Plaintiff alleges that Watch Hill Bank terminated her on account of her age and, therefore, is liable for such unlawful termination. (*See* 9/28/18 Second Amended Complaint ("SAC") ¶¶67, 70 [Doc. No. 34].) The ADEA and Ohio's anti-age discrimination statute prohibit an employer from terminating, without cause, an otherwise qualified and able-bodied employee age forty or over. *See* 29 U.S.C. § 623(a)(1) and Ohio Rev. Code § 4112(A). Due to the similarity between the two sets of statutes, the state and federal claims are both analyzed under the federal standard. *Wharton v. Gorman-Rupp Co.,* 309 Fed. Appx. 990, 995 (6th Cir. 2009).

The plaintiff bears the burden of demonstrating that "age was the 'but-for' cause of the employer's adverse action." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). A plaintiff can make such a showing either by direct or circumstantial evidence. *Id*. (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)). Direct evidence is evidence that "proves the exsistence of a fact without requiring any inferences" to be drawn, *Rowan v. Lockeed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004), whereas indirect evidence requires the factfinder to draw inferences from the evidence presented. *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir. 2003).

Here, plaintiff lacks any direct evidence of age discrimination. As to the factual basis for her age discrimination claim, plaintiff answered Watch Hill Bank's interrogatories as follows:

> Plaintiff responds that she was never made aware in the past that she needed to fill out a written form to be absent from work, much less for a few hours to take her child to a doctor or dentist, and that she had given oral notice in advance which had been approved by her supervisor. Many other employees, including her supervisor, and her far younger replacement had frequently take [sic] time off of work for various periods of a given day without asking in writing for permission, and they had not been counseled, or disciplined. At the time she was told by Gregory Niesen that she was being terminated, he refused to provide a reason. Even if Plaintiff was guilty as charged, that would be insufficient to warrant her termination, since she was an above-average worker with good reviews and lack of prior discipline. She was replaced by a much younger person under 40 years of age, and with far less experience than Plaintiff. Also, various managers of Defendant Watch Hill Bank had in the past made age-biased remarks.[8]

---

[8] Plaintiff's deposition testimony contradicts her interrogatory response insofar as she does not have any personal knowledge regarding her replacement (Pelcha Dep. at 137), nor does she have personal knowledge regarding whether her alleged replacement was required to fill out the request form. (Pelcha Dep. 31-32.) ("Q.: But backing up, my original question was how do you know that Lindsay did not fill out the form? A.: I can't prove that she didn't fill out the form. I can't say that I asked Lindsay, Did you fill out the form? No. Q.: Then what is your testimony that Lindsay didn't fill out the form based on? A.: I'm not saying she didn't directly not fill out the form. I said that Brenda, basically, to my knowledge, did not make her fill out the form. Q.: And what is that based on? What facts is that testimony based on? A.: I don't know." (*Id*.)

8

(*See* 1/9/19 Plaintiff's Verified Answers to Watch Hill Bank's First Set of Interrogatories, Interrogatory No. 12 (attached hereto as Exhibit E).) Finally, plaintiff recognizes that she was an at-will employee and could be terminated for any reason. (Pelcha Dep. at 111.)

Because plaintiff lacks direct evidence of age discrimination, her claim must be analyzed using the *McDonnell Douglas* burden-shifting framework. *See Blizzard,* 698 F.3d at 283. Under the *McDonnell Douglas* test, if plaintiff establishes a prima facie case of age discrimination, then Watch Hill Bank must articulate a legitimate, nondiscriminatory reason for the termination. *Id*. (quoting *McDonnell Douglas*, 411 U.S. 792, 802 (1973)). If Watch Hill Bank articulates a legitimate, nondiscriminatory reason for plaintiff's termination, then the burden shifts back to plaintiff to show that the proffered reason is a mere pretext. *Id*. (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003)). To show pretext, plaintiff must produce "sufficient evidence from which a jury could reasonably reject [Watch Hill Bank's] explanation of why it fired her." *Id*. (quoting *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009)).

However, even if plaintiff provides evidence showing that the stated reason for termination may be a pretext, Watch Hill Bank is still entitled to summary judgment if it had "an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. *Wilson v. Chipotle Mexican Grill, Inc.,* No. 12-CV-0087, 2013 WL 6008623, at *9 (S.D. Ohio Nov. 13, 2013) (citing *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 398 (6th Cir. 2008)). In evaluating whether Watch Hill Bank had such honest belief, the "key inquiry . . . is whether [it] made a reasonably informed and considered decision before taking the complained of action." *Id.*

    **1. Plaintiff Cannot Establish A Prima Facie Case Of Age Discrimination.**

9

To establish a prima facie case of age discrimination, plaintiff must show: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) replacement by someone outside her protected class, or that she was treated differently than similarly situated, nonprotected employees. *Id.* at *6.

Plaintiff's claim fails because she cannot establish (1) that she was replaced, (2) that she was "replaced" by a younger employee, or (3) that similarly situated younger employees were treated differently. A terminated employee is replaced "only when another employee is hired or reassigned to perform the plaintiff's duties." *Blizzard,* 698 F.3d at 284 (quoting *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). To the contrary, for the purpose of an ADEA claim, a terminated employee is *not* "replaced" when other existing employees assume the terminated co-worker's duties. *Id.* (citing *Grosjean v. First Energy Corp.,* 349 F.3d 332, 336 (6th Cir. 2003) (holding that "[a] person is not replaced when . . . the work is redistributed among other existing employees already performing related work") (internal quotation marks omitted)).

Here, plaintiff cannot satisfy her burden of proving that she was "replaced" by someone outside the protected class or by a significantly younger employee. As an initial matter, Plaintiff lacks personal knowledge of who replaced her, if anyone. (Pelcha Dep. at 137 ("Q. As a matter of fact, you do not know who replaced you, correct? A. I never went in the bank, no.") Further, the only record evidence on point demonstrates that Ms. Sonderman hired one new employee, who was in her fifties, to take on part of plaintiff's duties and then distributed plaintiff's remaining duties among existing employees. (Sonderman Dep. at 221-22, 236, 272-73.) On that point, Ms. Sonderman testified:

> Q.: Did you ever recall Greg [Niesen] talking about the need to attract younger tellers to be able to relate better to the younger customers?

10

> A.: No. I don't. That was never – never – I never had that discussion and when – for instance, when I hired the person that replaced Melanie, she was probably older than Melanie.
>
> Q.: Oh, yeah. Who did replace Melanie?
>
> A.: Sandy – Sandy Andrews.
>
> \* \* \*
>
> Q.: She was older?
>
> A.: Yes. (*Id*. at 236.)
>
> \* \* \*
>
> Q.: Who took – who – how were her duties divvied up or reassigned after she was let go?
>
> A.: At that point, Lindsay was officially transferred to our office. That was in progress or that happened either before or at the time Melanie was let go. So then once again met [sic], looked at the job duties that needed to be done, and determined who was going to take what. (*Id*. at 272-273.)
>
> \* \* \*
>
> Q.: After you hired Sandy, were Melanie Pelcha's job duties then distributed among all employees who were there at the bank?
>
> A. Any that – some that required little to no – no ed- experience possibly were done by some of the individuals. I did not – I'm going to repeat that I did not have anyone in the bank working for me that more than one year experience, other than Becky Roush, who didn't want to do anything over and above what she was doing. So the people to delegate to was very slim pickings. The majority of Melanie's work landed on myself and Rebecca Firestone. (*Id*. at 321-22.)

Thus, the only evidence regarding plaintiff's job duties is that, in addition to hiring an "older" employee to work on a part-time basis to partially replace plaintiff, her remaining duties were distributed to several existing employees – several of whom (Ms. Sonderman, Ms. Roush, and Joann) were in their mid-fifties or older at that time. (*See id*. at 12, 60.) Based on the

11

undisputed facts, Plaintiff cannot prove that she was "replaced" and, specifically, that she was replaced by a younger employee. *Blizzard* 698 F.3d at 284 (citing *Grosjean v. First Energy Corp.,* 349 F.3d 332, 336 (6th Cir. 2003)).

Further, plaintiff can offer no evidence that she was treated differently from similarly situated employees outside the protected class. In order to make such a showing, plaintiff must show that she "and any comparative employees 'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct." *Wilson,* at *7 (quoting *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000)). Plaintiff cannot point to any evidence that Ms. Sonderman did not recommend termination for younger employees who engaged in insubordination. Accordingly, her age discrimination claims fail as a matter of law. *Id*., at *8 (citing *Weatherby v. Fed. Ex.,* 454 Fed. Appx. 480, 488 (6th Cir. 2012)).

### 2. Even If Plaintiff Established A Prima Facie Case Of Age Discrimination, Watch Hill Bank Had A Legitimate, Nondiscriminatory Reason For Terminating Her.

Regardless of whether plaintiff can establish a prima facie case of age discrimination, Watch Hill Bank had a legitimate, nondiscriminatory reason for her termination. *Blizzard,* at 284.

At the July 8, 2016, Senior Management Meeting, Ms. Sonderman communicated significant concerns about plaintiff and, specifically, detailed plaintiff's insubordination. (Niesen Dep. at 100, 103.) On the afternoon of July 11th, Mr. Niesen, along with Senior Vice President Brian Veith, met with plaintiff to "listen to [plaintiff's] side of the story related to Brenda Sonderman's issues related to her employment." (*Id*. at 144-45.) Mr. Niesen was most concerned about the insubordination and failure to perform work. (*Id*.) Mr. Niesen asked plaintiff to meet with Ms. Sonderman first thing the next morning to discuss the issues or else "her continued employment was at risk." (*Id*. at 152-153.) The following morning, July 12th, Mr. Niesen received

12

a call from Ms. Sonderman who indicated that plaintiff came to work that day and "started negative talk again" and that Ms. Sonderman "had had enough." (*Id*. at 163-64.) Further, plaintiff had not attempted to discuss the issues with Ms. Sonderman that morning as urged by Mr. Niesen. (Sonderman Dep. at 256-58.) Based on Ms. Sonderman's recommendation, and the events as they unfolded on July 12th, Mr. Niesen terminated plaintiff. (Niesen Dep. at 168-170.)

As the Sixth Circuit Court of Appeals has held, "insubordination can constitute legitimate reason for termination." *Arnold v. Marous Bros. Const., Inc.,* 211 Fed. Appx. 377, 381 (6th Cir. 2006). The Sixth Circuit also cautions that "[o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Wilson,* at *8 (quoting *Corell v. CSX Transpo. Inc.,* 378 Fed.Appx. 496, 505 (6th Cir. 2010)). Here, there can be no doubt that Watch Hill Bank had a legitimate business reason for plaintiff's termination. Ms. Sonderman reported insubordination, for which Mr. Niesen has "zero tolerance . . . in the bank." (Niesen Dep. at 61.) Although Mr. Niesen offered plaintiff an opportunity to salvage her employment by meeting with Ms. Sonderman to discuss her concerns, plaintiff disregarded him and did not meet with Ms. Sonderman. (Sonderman Dep. at 256-58.)

Therefore, based on the facts available to Mr. Niesen at the time, his decision to terminate plaintiff was based on legitimate, nondiscriminatory reasons and constituted "reasonable reliance on the particularized facts that were before [him] at the time the decision was made." *Blizzard,* at 286.

### 3. Plaintiff Cannot Establish That The Proffered Reason For Her Termination Was Pretext.

Because Watch Hill Bank has proffered a legitimate, nondiscriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to show that the proffered reason is a mere pretext. *Id.* at 283 (quoting *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th

13

Cir. 2003)). To make this showing, plaintiff must produce "sufficient evidence from which a jury could reasonably reject [Watch Hill Bank's] explanation of why it fired her." *Id*. (quoting *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009)).

Plaintiff will undoubtedly offer testimony of alleged discriminatory remarks made about *other* bank employees or prospective employees, and conjecture about Ms. Sonderman "favoring" younger employees. She may even offer stories about management yelling, cursing, pounding fists on tables, and other anecdotes describing her purported experience at Watch Hill Bank. However, plaintiff's effort to salvage her claims fails because she is unable to produce "sufficient evidence from which a jury could reasonably reject [Watch Hill Bank's] explanation of why it fired her. *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 (6th Cir. 2009). In short, pretext "is a commonsense inquiry: did the employer fire the employee for the stated reasons or not?" *Id.,* at n.4. Indeed, tellingly, at no time during her employment did plaintiff bring concerns of age discrimination to the bank's management. Even further, Ms. Sonderman testified that Mr. Niesen made no mention of plaintiff's age in connection with plaintiff's termination. (Sonderman Dep. at 262.)

Regardless, Mr. Niesen was the sole decision-maker regarding plaintiff's termination and had "full authority" to do so. (Niesen Dep. at 168.) After being advised by Ms. Sonderman that she experienced problems with plaintiff – specifically, insubordination, negative attitude, failure to comply with protocol, and failure to complete work assignments – Mr. Niesen relied on Ms. Sonderman's "recommendation for immediate termination of Melanie Pelcha" and he terminated her. (*Id*. at 156-57, Ex. 6.) There is no basis to suggest that Mr. Niesen's decision was based on anything other than a considered assessment and an honest belief that plaintiff had been insubordinate and was worthy of termination. *See Arnold v. Marous Bros. Const., Inc.,* 211 Fed.

14

Appx. 377, 381 (6th Cir. 2006) (holding that "insubordination can constitute legitimate reason for termination"). To find otherwise, would require the Court to take on the role of a "super personnel department that second guesses employers' business judgments." *Wilson,* at *8 (quoting *Corell v. CSX Transpo. Inc.,* 378 Fed. Appx. 496, 505 (6th Cir.2010)).

Accordingly, because plaintiff cannot prove that Watch Hill Bank's articulated reason for her termination was pretext, Watch Hill Bank is entitled to summary judgment.

### B. Plaintiff Has No Evidence To Support Her Claim For A Violation Of Ohio's Shareholder Statute.

Although it is her status as a shareholder of MW Bancorp that is the subject of plaintiff's shareholder claim, plaintiff's Second Amended Complaint does not expressly identify which defendant is the target of the claim. Thus, in excess of caution and in defense of this claim, Watch Hill Bank incorporates the arguments advanced by MW Bancorp in its separate summary judgment motion on this claim. Accordingly, for the reasons articulated by MW Bancorp, Watch Hill Bank is not subject to liability to plaintiff for any alleged violation of Ohio's shareholder statutes.

### IV. CONCLUSION

For all the reasons explained above, Watch Hill Bank requests that this Court grant its motion and dismiss plaintiff's claims against it, with prejudice.

Respectfully submitted,

*/s/ Robin D. Miller*
Robin D. Miller (0074375)
ULMER AND BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: 513-698-5054
Fax: 513-698-5055
E-Mail: rmiller@ulmer.com

*Attorney for Defendant Watch Hill Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2019 a true and correct copy of the foregoing was electronically filed with the Court and served on all counsel of record via CM/ECF.

                        */s/ Robin D. Miller*
                        Robin D. Miller (0074375)