UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MELANIE PELCHA, | ) | Case No. 1:17 CV 497 |
| | ) | |
| Plaintiff, | ) | Judge Black |
| | ) | |
| v. | ) | |
| | ) | |
| MW BANCORP, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MW BANCORP, INC.'S SUMMARY JUDGMENT MOTION

Pursuant to Fed. R. Civ. P. 56(C), Defendant MW Bancorp, Inc. ("MW Bancorp") moves the Court for an order granting it summary judgment on plaintiff Melanie Pelcha's claims against it. Summary judgment is warranted as there are no genuine issues of material fact and MW Bancorp is entitled to judgment as a matter of law. Specifically, the undisputed facts establish that:

(1) MW Bancorp was not plaintiff's employer and, as a holding company, is not liable to plaintiff;

(2) MW Bancorp and Watch Hill Bank were not "joint employers" of plaintiff under state and federal age discrimination statutes;

(3) MW Bancorp and Watch Hill Bank were not a "single employer" under state and federal age discrimination statutes; and

(4) MW Bancorp is not liable to plaintiff under Chapter 1701 of the Ohio Revised Code because Ohio's shareholder statutes do not apply to MW Bancorp and because plaintiff was provided all information provided to all shareholders of MW Bancorp.

As more fully established below, because there are no genuine issues of material fact, the Court should grant MW Bancorp's summary judgment motion. The reasons for this Motion are more fully explained in the accompanying Memorandum in Support.

Respectfully submitted,

*/s/ Robin D. Miller*
Robin D. Miller (0074375)
ULMER AND BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone:  513-698-5054
Fax:  513-698-5055
E-Mail:  rmiller@ulmer.com

*Attorney for Defendant*
*MW Bancorp, Inc.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiff Melanie Pelcha initiated this action against her former employer, defendant Watch Hill Bank, after being terminated in July 2016.  Presumably out of an abundance of caution to sue the correct corporate entity, plaintiff also sued MW Bancorp., Inc. ("MW Bancorp."), the corporate holding company for Watch Hill Bank's stock.  Plaintiff seeks damages from Watch Hill Bank and MW Bancorp for alleged violations of state and federal anti-discrimination statutes on the ground that she was allegedly terminated from Watch Hill Bank on account of her age.  Plaintiff also seeks damages for MW Bancorp's alleged violation of Ohio's shareholder statutes on the ground that it failed to provide her information to which she claims to be entitled as a shareholder of MW Bancorp.  As the undisputed record reveals, there are no facts that could entitle plaintiff to relief on her claims against MW Bancorp.  Accordingly, MW Bancorp is entitled to judgment in its favor as a matter of law.

### II.   THE RECORD EVIDENCE ESTABLISHES THAT PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.[1]

MW Bancorp is the holding company for Watch Hill Bank.  (*See* 9/28/18 Second Amended Complaint ("SAC") ¶3 [Doc. No. 34] (stating "Defendant MW Bancorp, Inc. [] is the holding company for Defendant Watch Hill Bank."); *see also* 8/20/18 Answer and Defenses of Defendant Watch Hill Bank to Plaintiff's Second Amended Complaint ("Watch Hill Bank's Answer to SAC") ¶3 [Doc. No. 31] (stating that "Watch Hill Bank admits only that MW Bancorp, Inc. is the holding company of Watch Hill Bank.")  MW Bancorp is not an operating company, e.g., it does not have any business operations outside its status as the holding company for Watch Hill Bank.  (4/15/19

---

[1] MW Bancorp's Motion is also supported by the Statement of Undisputed Facts filed simultaneously with this Motion.

& 4/29/19 Depositions of Gregory P. Niesen ("Niesen Dep.") at 18, 29 (excerpts from both

volumes attached hereto as Exhibit A).)  The "purpose of [the formation of MW Bancorp] was so

that the IPO proceeds could reside at the holding company level at the time of issuance." (*Id*. at

18.)  MW Bancorp does not have any employees or payroll. Mr. Niesen explained:

> Q.:     Okay.  Does MW Bancorp have a payroll?
>
> A.:     No.
>
> Q.:     Does not?
>
> A.:     It does not.
>
> Q.:     So no one is paid with a check that says MW Bancorp on it?
>
> A.:     They are not.

(*See id*. at 22.)

Watch Hill Bank hired plaintiff in August of 2005.[2]  (SAC ¶9; Watch Hill Bank's Answer

to SAC ¶9.)  Her paychecks and W-2 were issued by Watch Hill Bank.  (Pelcha Dep. at 158, Ex.

15.)  When Watch Hill Bank terminated plaintiff,  she was a Branch Operations Manager for Watch

Hill Bank.  (*See id*. at 58-61.)  In May of 2016, when plaintiff's prior supervisor, Janet Schneider,

left the bank, plaintiff began reporting to Brenda Sonderman.  (*See id*. at 26.)  Ms. Sonderman

exercised more authority over bank employees than Ms. Schneider had.  (*Id*. at 47.)  Plaintiff had

"problems with [Ms. Sonderman]." (*Id*. at 25.)  Specifically, plaintiff felt that Ms. Sonderman was

"making her own footprint within the bank" and trying "to be her own boss, do stuff different from

[Ms. Schnieder]." (*Id*. at 27.)  Plaintiff was concerned that Ms. Sonderman was not qualified to

be a supervisor.  (*Id*. at 48-49.)  In short, plaintiff and Ms. Sonderman had a "strained working

---

2 At the time plaintiff began her employment, the bank was known as Mount Washington Savings Bank.  (3/22/19
  Deposition of Melanie Pelcha ("Pelcha Dep.")  at 15 (excerpts and exhibits cited to within this Motion are attached
  as Ex. B).)  The bank later changed its name to Watch Hill Bank.  (*Id*. at 18-19.)

relationship." (4/25/19 Deposition of Brenda Sonderman ("Sonderman Dep.") at 245 (excerpts attached hereto as Ex. C.)

In early July 2016, Ms. Sonderman reported at a Senior Management Meeting at the bank, that plaintiff exhibited "numerous conduct issues and repeated performance issues." (Niesen Dep. at 99.) Ms. Sonderman provided examples of plaintiff displaying insubordination, failing to complete tasks, and presenting a negative attitude. (*Id*. at 100-104.) In Mr. Niesen's mind, plaintiff's insubordination was the most concerning. (*Id*. at 61-62, 102, 112-113.) Operating under a "zero tolerance" policy for insubordination, Gregory Neisen, the President and CEO of Watch Hill Bank, terminated plaintiff based on Ms. Sonderman's recommendation. (*Id*. at 112-113, 127.) Following plaintiff's termination, she applied for and received unemployment benefits from Watch Hill Bank. (Pelcha Dep. at 150-152, Exs. 11, 12 & 13.)

### III. ARGUMENT

#### A. Summary Judgment Is Warranted On Plaintiff's Claims.

Summary judgment is available under Fed. R. Civ. P. 56(C) if MW Bancorp establishes that the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." MW Bancorp bears the initial burden of pointing to the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). However, once it establishes the absence of a genuine issue of material fact, plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, plaintiff

must show that the "evidence is such that a reasonable jury could return a verdict" in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In the present matter, there is no legitimate dispute that: (1)  MW Bancorp was not plaintiff's employer and, as a holding company, is not liable to plaintiff; (2) MW Bancorp and Watch Hill Bank were not "joint employers" of plaintiff under state and federal anti-discrimination statutes; (3)  MW Bancorp and Watch Hill Bank were not a "single employer" under state and federal anti-discrimination statutes; and (4) MW Bancorp is not liable to plaintiff under Chapter 1701 of the Ohio Revised Code because Ohio's shareholder statutes do not apply to MW Bancorp and because plaintiff was provided all information provided to all shareholders of MW Bancorp.

**B.      MW Bancorp Is Entitled To Judgment As A Matter Of Law Because It Was Not Plaintiff's Employer And, As A Holding Company, It Is Not Liable To Plaintiff.**

MW Bancorp is simply a holding company, i.e., the parent of Watch Hill Bank.  (SAC ¶3; Watch Hill Bank's Answer to SAC ¶3; *see also* Niesen Dep. at 18.)  As such, MW Bancorp and Watch Hill Bank are two separate and distinct legal entities.  It is well settled in Ohio that, absent fraud or illegality, a parent company is not liable for the torts of its wholly owned subsidiary.  *See e.g. North v. Higbee Co.,* 131 Ohio St. 507, 515-516, 3 N.E.2d 391 (1936); *Belvedere Condominium Unit Owners' Association  v. R.E. Roark Cos*., 67 Ohio St.3d 274, 289, 19-Ohio-119, 617 N.E.2d 1075 (1993); *State ex rel. Lewis v. Industrial Commission of Ohio,* 23 Ohio St.3d 195, 197, 491 N.E.2d 1142 (1986).  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Precision, Inc. v. Kenco/Williams, Inc*., 66 Fed. Appx. 1, 4 (6th Cir. 2003) (citing *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998)).

For instance, this Court has held that a holding company is not an "employer" where the holding company was not an operating company, did not have any employees or payroll, and did not operate any locations. *Mitchell v. Abercrombie & Fitch, Co.,* 428 F.Supp.2d 725, 744-45 (S.D. Ohio 2006). In *Mitchell,* the plaintiff filed suit against his employer and the employer's holding company alleging that various employment statutes were violated. Granting summary judgment in favor of the holding company, the Court held that:

> Defendant, Abercrombie & Fitch Co., is a holding company and is not an operating company. It has no employees, no payroll and operates no stores. (Citation omitted.) Under the FLSA, the term "employee" means "any individual employed by an employer," and "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee …." (Citation omitted.) Similarly, in Ohio, "employer" means "any individual, partnership, association, corporation, business trust, or any person or group of persons, acting in the interest of an employer in relation to an employee…." (Citation omitted.)
>
> Abercrombie & Fitch Co., is not an employer under the FLSA, 29 U.S.C. section 203(d), nor is it an employer under the Ohio Act, O.R.C. 4111.01(C). Both statutory definitions require the existence of an employer-employee relationship. Plaintiff has come forward with no evidence to contradict Abercrombie & Fitch Co.'s assertion that it is not an "employer." Accordingly, all claims against Abercrombie & Fitch Co. are DISMISSED.

*Id*.

The same analysis applies here. The ADEA and the FLSA define "employer" similarly. Under the ADEA, an "employer" is "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks …." 29 U.S.C. § 630(b). Further, the ADEA defines "employee" as "an individual employed by an employer …." *Id*. Thus, like the FLSA, the ADEA "requires the existence of an employer-employee relationship." *Mitchell,* 428 F. Supp at 744-45.

Here, the record evidence establishes that MW Bancorp is not an operating company –

meaning, it does not have any business operations outside its status as the holding company for

Watch Hill Bank. (*See* Niesen Dep. at 18, 29.)  As Gregory Niesen explained, "the purpose of [the

formation of MW Bancorp] was so that the IPO proceeds could reside at the holding company

level at the time of issuance." (*Id*. at 18.)  Further, MW Bancorp does not have any employees or

payroll. (*See id*. at 22.)  By definition, because MW Bancorp does not have twenty employees –

let alone *any* employees – it is not an "employer" under the ADEA.  29 U.S.C. § 630(b).

Further still, plaintiff's unemployment compensation was paid by Watch Hill Bank, not

MW Bancorp, (Pelcha Dep. at 150-152, Exs. 11, 12, & 13) and her W-2 was issued by Watch Hill

Bank. (*Id*. at 158, Ex. 15.)  Those facts are undisputed.  Accordingly, because plaintiff can offer

no evidence to show that: (1)  MW Bancorp terminated her; or (2) that MW Bancorp was an

operating company at which she was an "employee," or that MW Bancorp was her "employer,"

summary judgment in MW Bancorp's favor is warranted.

**C.      MW Bancorp Is Entitled To Judgment As A Matter Of Law Because Plaintiff Cannot Establish Any Employer Status For MW Bancorp.**

Knowing that MW Bancorp did not employ her, plaintiff seeks to impute liability to MW

Bancorp on the ground that it was a "joint employer" with Watch Hill Bank. (*See* SAC ¶¶14, 58.)

Alternatively, plaintiff alleges that MW Bancorp is liable to her because it and Watch Hill Bank

"constituted a single employer or single integrated enterprise." *Id.* ¶15.  Both arguments fail

because plaintiff can prove no set of facts establishing that MW Bancorp and Watch Hill Bank

were "joint employers" or, alternatively, a "single integrated enterprise."  Accordingly, MW

Bancorp is entitled to judgment as a matter of law.

### 1.    Plaintiff Cannot Establish That MW Bancorp Was a Joint Employer.

The joint employer doctrine is triggered where "two or more employers exert significant control over the same employees." *Sampson v. Sisters of Mercy Willard, Ohio,* No. 12-CV-0824, 2015 WL 3953053, at \*6 (N.D. Ohio June 29, 2015).   Specifically, two employers may be considered "joint employers" when they "handle certain aspects of their employer-employee relationship jointly." *Bricker v. R&A Pizza, Inc.,* 804 F. Supp. 2d 615, 622 (S.D. Ohio 2011). Under the joint employer doctrine, "an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Id.* at 622 (quoting *Arculeo v. On-Site Sales & Mktg., LLC,* 425 F.3d 193, 198 (2d Cir. 2005)).

In *Bricker,* the plaintiff attempted to hold an entity liable for the alleged bad acts of the plaintiff's employer.  When the original complaint was challenged by the non-employer entity, the plaintiff filed an amended complaint and, essentially, did little more "than add the words "and Domino's [the non-employer entity]" to the allegations of the original complaint.  *Id.* at 618.  The plaintiff alleged that the two companies "were a single employer and/or were involved in a joint venture." *Id.* at 621.  The court dismissed the claims against the non-employer, holding that the plaintiff's "conclusory statements do not demonstrate the plausibility of the [plaintiff's] assertions that the Defendants are engaged in a joint venture or, stated more accurately, acted as a joint employer." *Id.*

The *Bricker* Court's analysis applies equally here and, with the evidence elicited in discovery, there is no evidence from which the Court could possibly conclude that MW Bancorp and Watch Hill Bank were joint employers.  As an initial matter, employer liability cannot be

9

imposed on MW Bancorp because it is not an "employer" as defined by the ADEA as a matter of law. *See* Section III(B), *supra*. In addition, there is no evidence in the record showing that plaintiff was "assigned to work in circumstances that justify the conclusion that [she] is at the same time constructively employed by" MW Bancorp. *Bricker,* 804 F. Supp. 2d at 622 (quoting *Arculeo v. On-Site Sales & Mktg., LLC* 425 F.3d 193, 198 (2d Cir. 2005)). MW Bancorp was not an operating company and the record evidence clearly establishes that plaintiff worked only for Watch Hill Bank, not MW Bancorp. (*See* Pelcha Dep. at 20, 22 (explaining that she was hired as a full-time bank teller; that she "did mortgage stuff" in addition to her teller duties; and that she served as "a loan processer"); *see also* Niesen Dep. at 29 (explaining that there are "no banking activities at MW Bancorp").) Accordingly, because plaintiff cannot marshal any facts to support a joint employer theory, MW Bancorp's summary judgment motion should be granted.

> **2. Plaintiff Cannot Establish That MW Bancorp And Watch Hill Bank Are A Single Employer.**

Plaintiff alleges, alternatively, that MW Bancorp is liable to her because it and Watch Hill Bank are a "single integrated enterprise." (*See* SAC ¶15.) However, as with the joint employer theory, plaintiff cannot establish the necessary facts to support a "single employer" theory. Under the single employer doctrine, "two companies may be considered *so interrelated* that they constitute a single employer subject to liability under the ADEA." *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 (6th Cir. 1997) (emphasis added). In considering whether two companies should constitute a single employer, courts consider four factors: (1) the interrelation of the operations; (2) common management, directors, and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. *Id.* No one factor of the single employer analysis controls. *Id.*

10

An analysis of the first and third factors, weigh against a finding that MW Bancorp and Watch Hill Bank are joint employers.  Again, MW Bancorp is not an operating company and has no employees.  (Niesen Dep. at 22.)  Those facts alone necessarily preclude a finding that the two companies have interrelated operations (because MW Bancorp does not "operate") or that their labor relations and personnel are centralized (because MW Bancorp does not have any employees).  Likewise, regarding the second factor, the MW Bancorp and Watch Hill Bank Boards of Directors meet separately, with different frequencies – the MW Bancorp Board meets quarterly while the Watch Hill Bank Board meets monthly.  (*Id*. at 40.)  And, although Mr. Niesen is the CEO of both entities, his duties for each entity differ.  (*Id*. at 22-23.)

Further, the "management" of the two entities differ insofar as MW Bancorp does not operate and, therefore, does not have managers – other than the Board of Directors.  Watch Hill Bank, however, has a "senior management team," "supervisors," and "managers."  (*Id*. at 73, 81, 84; Pelcha Dep. at 21-23; 4/11/19 Deposition of Janet Schneider ("Schneider Dep.") at 56-57, 101-102 (excerpts attached  as Ex. D); Sonderman Dep. at 54-55.)  Finally, the fourth factor also weighs against plaintiff's theory that MW Bancorp and Watch Hill Bank are a single employer because they did not have common ownership.  MW Bancorp was a publicly traded entity (owned by its shareholders), while Watch Hill Bank was wholly-owned by MW Bancorp. (Niesen Dep. at 20.)[3]

Accordingly, because there are no genuine issues of material fact regarding plaintiff's allegation that MW Bancorp and Watch Hill Bank were a single employer, MW Bancorp is entitled to judgment in its favor as a matter of law.

**D.      MW Bancorp Is Not Liable To Plaintiff Under Ohio's Shareholder Statutes.**

---

[3] The fact that Watch Hill Bank is wholly-owned by MW Bancorp, standing alone, is insufficient grounds to hold it liable.  *See* Section III(B), *supra*.  If MW Bancorp were held liable simply because it is Watch Hill Bank's parent, then the corporate distinctions between all parent and sub-companies would be meaningless.

11

After MW Bancorp went public in 2015, plaintiff purchased 5,000 shares of its stock at $10.000 per share.  (SAC ¶30.)  Plaintiff alleges that, after her purchase of shares, at "no time thereafter did [MW Bancorp] send her minutes of shareholder meetings or copies of periodic financial statements and other financial information.  (*Id*. ¶31.)  Plaintiff further alleges that she made a demand for such information in October 2016 but that "Defendants have nonetheless refused and continue to refuse to make available to Ms. Pelcha any of this requested information" (*id*. ¶32) in violation of Sections 1701.37(c) and 1701.38(c) of the Ohio Revised Code.

MW Bancorp is entitled to judgment in its favor for two reasons.  First, MW Bancorp was formed and organized under the laws of the State of Maryland.  (*See* Pelcha Dep. Ex. 14.)  It, therefore, is not governed by the shareholder laws of the State of Ohio, including Sections 1701.37 and 1701.38.  Section 1701.01 of the Ohio Revised Code states that "[a]s used in Sections 1701.01 to 1701.98 of the Revised Code," "corporation" means "a corporation . . . formed under the laws of this state."  Ohio Rev. Code §1701(A).  Because MW Bancorp was not formed under the laws of the State of Ohio, the requirements of Chapter 1701 do not apply to it.

Furthermore, even if the Court were to hold MW Bancorp to the mandates of Ohio's shareholder statutes, plaintiff's claim still fails.  Section 1701.37, which requires that Ohio corporations keep "correct and complete books and records," details specific prerequisites that a shareholder must follow when requesting information from the corporation.  The statute expressly states:

> Any shareholder of the corporation, ***upon written demand stating the specific purpose thereof***, shall have ***the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose***, the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies of extracts thereof.  Any written demand by an acquiring person to examine the records of

12

> shareholders for the purpose of communication with shareholders of the issuing public corporation in connection with a meeting of shareholders called pursuant to section 1701.831 of the Revised Code shall be deemed to have been made by a shareholder of the issuing public corporation for a reasonable and proper purpose.

Ohio Rev. Code §1701.37(C) (emphasis added).

Plaintiff argues that she demanded the requested information by way of an October 16, 2016, letter from her counsel to Defendants' counsel.  (SAC ¶32.)  Plaintiff's demand failed to comply with the statutory requirements because her demand did not state "the specific purpose" (or *any* purpose) for her request.  (See Niesen Dep. at 237, Ex. 40.)  *See Burkick v. Burd Brothers, Inc.,* 12th Dist. Clermont No. CA2018-07-054, 2019-Ohio-1593, at ¶11 (dismissing a claim for violation of Section 1701.37 because the "letter demanding the account was deficient under R.C. 1701.37(C) for failing to state a specific purpose for the request").  While there is a presumption in the law that a shareholder's stated purpose is "made in good faith," and the corporation has the burden of "rebutting the presumption by proving that the shareholder's actual purpose is improper or unreasonable," MW Bancorp could not evaluate the reason for plaintiff's demand because she did not provide a purpose.  *See No-Burn, Inc. v. Murati,* 9th Dist. Summit No. 25495, 2011-Ohio-5635, at ¶17.  Thus, because plaintiff did not indicate any proper purpose for her demand, she should not be entitled to any presumption that her demand was for a proper purpose.

Even further, plaintiff conceded that she received from MW Bancorp a "meeting booklet" annually.  (Pelcha Dep. at 155.)  Although she does not recall, specifically, what information was contained in the "meeting booklet," she acknowledged that the information provided came in a "large envelope" and contained a proxy statement with notice of the annual meeting and other information.  (*Id*. at 155-158.)  MW Bancorp Inc.'s affidavits of mailing further establish that, for each year she owned stock in MW Bancorp, plaintiff received the same information provided to

all shareholders.  (*See* Affidavits of William Valentin, collectively attached as Ex. E.)  That information, which included MW Bancorp's voluminous Form 10-K, detailed the financial condition of MW Bancorp.  (Niesen Dep. at 239-240.)

Accordingly, because Ohio Revised Code Chapter 1701 does not apply to MW Bancorp, there are no genuine issues of material fact regarding its compliance with the statutes therein. Further, and in any event, because plaintiff did not comply with the requirements of  Ohio Rev. Code §1701.37 and because she, in fact, received information related to MW Bancorp's finances, MW Bancorp is entitled to judgment in its favor as a matter of law.

## IV.      CONCLUSION

For all the reasons explained above, MW Bancorp requests that this Court grant judgment in its favor as a matter of law.  MW Bancorp did not employ plaintiff and, as a holding company, cannot be liable to her.  Further, plaintiff can prove no set of facts to establish that MW Bancorp is a "joint employer" or that it and Watch Hill Bank are a single employer enterprise.  Moreover, although MW Bancorp is not governed by Ohio Revised Code Chapter 1701, plaintiff's claims, nevertheless fail because she did not comply with Section 1701.37's requirements.  Finally, she was provided the same information provided to all shareholders.  Thus, MW Bancorp respectfully requests that the Court award summary judgment in its favor.

Respectfully submitted,

*/s/ Robin D. Miller*
Robin D. Miller (0074375)
ULMER AND BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone:  513-698-5054
Fax:  513-698-5055
E-Mail:  rmiller@ulmer.com

*Attorney for Defendant MW Bancorp*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2019, a true and correct copy of the foregoing was electronically filed with the Court and served on all counsel of record via CM/ECF.

*/s/ Robin D. Miller*
Robin D. Miller (0074375)

CIN2000:2603078v2
41434.00003